COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Senior Judge Coleman
Argued at Chesapeake, Virginia


ANTONIO C. NOLEN
                                    MEMORANDUM OPINION* BY
v.    Record No. 0226-02-1          JUDGE JAMES W. BENTON, JR.
                                         JANUARY 14, 2003
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                  Dean W. Sword, Jr., Judge

        Robert F. Haley, II (Marcari, Russotto &
        Spencer, on brief), for appellant.

        Stephen R. McCullough, Assistant Attorney
        General (Jerry W. Kilgore, Attorney General,
        on brief), for appellee.


     The trial judge convicted Antonio C. Nolen of conspiracy to

commit robbery, armed robbery, and use of a firearm in the

commission of a felony.  Nolen contends the trial judge erred in

ruling that the prosecutor did not commit two Brady violations and

in finding that the evidence was sufficient to sustain the

convictions.  We affirm the convictions.

                              I.

     The evidence proved Tynetta Miller gave statements to the

police on March 21, 2001 and March 27, 2001, confessing her

participation with several men in a series of robberies in the

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

City of Portsmouth.  In response to discovery, the prosecutor delivered those recorded statements to Antonio Nolen's attorney prior to trial.  The prosecutor also informed Nolen's attorney of an unrecorded pre-trial interview in which Miller indicated she suffers from a mental condition that causes hallucinations.

At trial, Miller testified that Nolen was her son's friend and that she has known Nolen "a long time."  She testified that Nolen was present in her apartment on February 25, 2001 when she, Nolen, Jamall Mabry, Larry Mabry, and Donte Ward devised a robbery scheme.  They agreed that Miller would go to a local bar and lure a male customer to an area near her apartment.  When Miller and the customer exited the car, the four men would rob the customer.

Miller testified that after they devised this plan she, Nolen, and the other men went in Miller's car to the Tides Inn.  Miller entered the bar alone, had a few drinks, and met Eliot Lassiter and Kenneth Barham.  During her conversations with Lassiter and Barham, Miller said she wanted to go to a friend's house to buy marijuana.  Lassiter and Barham left the bar with Miller, and Barham drove his car at Miller's direction toward her apartment.  Miller testified that after she and Lassiter exited the car and walked across a street near her apartment, she heard Nolen's gun make a "clicking" sound and then heard Nolen say, "Hold it right there, baby boy.  Give it up."  Miller said Nolen's face was "covered with something," Jamall Mabry was wearing a hooded jacket, and Ward was wearing a hat.  Larry Mabry

-

simultaneously was robbing Barham, who had remained in the car. Miller testified that she ran away and later returned to her apartment. Nolen, Ward, Jamall Mabry, and Larry Mabry were inside her apartment when she arrived. Miller testified that the men had divided the $100 they obtained in the robbery and that they gave her ten or fifteen dollars. Miller also said when the men left her apartment, Larry Mabry was carrying compact discs he had obtained during the robbery.

On cross-examination, Miller admitted to "smoking crack that night and drinking." Miller also acknowledged experiencing hallucinations and having mental problems. She did not recall either the day of the week the robbery occurred or whether it occurred in February. She testified, however, that she "kn[e]w it happened that night." She also testified that she participated in a number of robberies with Larry Mabry and Jamall Mabry on different days, but said Nolen was only involved in "this [robbery] I'm testifying for today." When asked about the discrepancies between her testimony and a statement she had earlier recorded for the police, Miller said she did not remember telling the police that she went to the "Frontier" bar or that Nolen was driving his girlfriend's car on the night of the robbery. Miller admitted she first falsely told the police that Donte Scarborough, rather than Donte Ward, participated in this robbery. Miller explained that she lied about Donte Scarborough's involvement because she was "afraid of the guy finding out [she]

-

was telling everything" and "afraid for [her] life." Miller acknowledged that in exchange for her testimony, the Commonwealth agreed to recommend a "20-year cap" for the sentencing of all her charges.

Lassiter testified that on February 25, 2001, he and Barham were at the Final Frontier bar, which is located beside Lappers strip club. He identified Miller as the woman they met in the bar and accompanied to an apartment to purchase marijuana. When they arrived at an apartment complex, Lassiter exited the car with Miller. As they approached a residence, Lassiter saw three men, wearing dark clothes and "ski masks," running toward him. Lassiter testified that Miller ran when the men ordered him at gunpoint to face a wall and took his wallet and coat. After Lassiter returned to his car where Barham waited, Lassiter discovered that his compact discs and cellular phone had been taken. Lassiter reported the robbery to the police that night.

A detective testified that he questioned Nolen after Miller told the police about the robberies. During questioning, Nolen confessed his involvement in the robbery but said he could not "put a date" on the robbery. Nolen recalled, however, that he, Ward and Larry Mabry took Miller to the "Frontier" bar. Later, that evening, in response to Miller's telephone call, Nolen drove Ward, Larry Mabry, and Jamall Mabry to the vicinity of Miller's apartment. Nolen said "[t]hey were going to wait for [Miller] to bring a guy back so they could rob him." Nolen said he sat in the

-

car and watched Ward, Larry Mabry, and Jamall Mabry commit the robbery.  He told the officers that Ward and Jamall Mabry obscured their faces with bandannas and returned to the car after the robbery with a coat, a hundred-dollar bill, and a cell phone. Although Nolen disclosed other criminal activities when he talked to the police, he said this was the only robbery in which he participated.  Nolen specifically recalled driving Miller's car because he was the only one of the men with a driver's license. Nolen also recalled that his parole ended the third week in January and that the robbery occurred four weeks after his parole ended.

At the conclusion of the Commonwealth's case-in-chief, Nolen re-called Miller to testify.  She testified that she had been involved in "a lot of robberies . . . committed by these guys" but that she specifically recalled this robbery because they "got the two guys."  She also testified that the Tides Inn is connected to the Lappers Club and that the Frontier bar is "right down the street" from the Tides Inn.

The trial judge convicted Nolen of conspiracy to commit robbery, robbery, and use of a firearm in the commission of the robbery.

II.

The United States Supreme Court held in Brady v. Maryland, 373 U.S. 83 (1963), that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process

-

where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. The Court has also held as follows:

> [T]he duty to disclose such evidence is applicable even though there has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107 (1976), and . . . the duty encompasses impeachment evidence as well as exculpatory evidence, United States v. Bagley, 473 U.S. 667, 676 (1985). Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id., at 682; see also Kyles v. Whitley, 514 U.S. 419, 433-434 (1995).

Strickler v. Greene, 527 U.S. 263, 280 (1999). The Court's mandate that exculpatory evidence be provided to the accused is based on the long standing principle that the suppression of evidence favorable to the accused can deprive the defendant of a fair trial. Bagley, 473 U.S. at 675.

Nolen argues that the trial judge should have granted his motion for a mistrial because the prosecutor never disclosed that Miller's trial testimony would be "radically different from" her two recorded statements. The record, however, proved that in a "Notice of Exculpatory Evidence," the prosecutor gave Nolen a copy of Miller's March 21, 2001 statement and specifically informed Nolen that Miller's statement may be inconsistent with her expected testimony. In that notice, the prosecutor also disclosed Miller's May 8, 2001 oral statements that she experiences visual and auditory hallucinations and that

-

she was taking medication to control various conditions including depression and an unspecified mental condition. In a later addendum to this notice, the prosecutor gave Nolen Miller's March 27, 2001 statement, disclosed that Miller was housed in a jail's medical unit for treatment, disclosed Miller's use of alcohol and crack cocaine during the events at issue, and attached a copy of Miller's plea agreement.

In those recorded statements, Miller asserted facts that were different from her trial testimony. For example, in her first taped statement, Miller said Donte Scarborough was among the robbers, including Nolen. She also claimed Nolen was driving his girlfriend's car, not Miller's. The differences between Miller's second taped statement and her trial testimony are more trivial. For example, in the second taped statement, Miller claimed the robbery occurred in the middle of a yard, yet at trial, she testified the robbery occurred close to an apartment building. At trial, however, Nolen highlighted each of the inconsistencies between Miller's testimony and her previous statements. Indeed, Miller repeatedly acknowledged at trial that she initially lied to the police about certain aspects of the robberies. She explained that she was afraid of retaliation from the robbers, whom the police had not arrested.

The record supports the trial judge's ruling that the Commonwealth's disclosure was sufficient. The prosecutor disclosed Miller's recorded statements, told the defense of her

-

mental and drug problems, and indicated he expected Miller's testimony to be inconsistent with her first statement. The trial judge correctly observed "that the Commonwealth has provided the information . . . they have [from Miller] and it's a matter of [Nolen] drawing conclusions from what that information says." We hold that the record fails to establish a Brady violation as to Miller's statements and disclosures.

III.

Nolen contends the Commonwealth committed an additional Brady violation by failing to disclose that Donte Ward told police detectives Nolen was not involved in the robbery. The trial judge ruled that the failure to disclose Ward's statement was a violation, but he concluded that the omission was not material. In support of his ruling, the trial judge found as follows:

> [T]here could be no possible doubt that the defendant did, in fact, commit crimes for which he was tried and convicted. And the reason that I say this is that, we have his statement that he gave to the police, and the statement is reliable. It has a lot of facts about the offense which would probably be only known to someone who did take part in the crime. And then, of course, we had the testimony of . . . Miller who was a codefendant who the Court considered to be a very credible witness, who also unequivocally implicated the defendant in the criminal activity.

-

Evidence is material under Brady "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682.

> "'A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" Therefore, appellant "must show that when the case is evaluated in the context of the entire record, including the omitted evidence, a jury would have entertained a reasonable doubt" as to appellant's guilt. "The mere possibility that an item of undisclosed information might have helped the defense . . . does not establish 'materiality' in the constitutional sense." "The materiality inquiry is a context-specific determination; evidence that is material in one setting could be immaterial in another."

Frontanilla v. Commonwealth, 38 Va. App. 220, 226-27, 562 S.E.2d 706, 709 (2002) (citations omitted).

In light of Nolen's confession, Lassiter's testimony, and Miller's testimony, which the trial judge found to be "very credible," we hold that even if the Commonwealth had disclosed Ward's statement to the defense, it is unlikely the result of the trial would have been different. Nolen's confession, which was corroborated by Miller's testimony, established that Nolen participated in only one robbery with Miller and the other men. Moreover, Nolen's confession gave explicit details that linked him to the robbery of Lassiter. Although the evidence at the sentencing proceeding proved that Ward identified the participants who robbed Lassiter and named another person in

-

lieu of Nolen, the evidence also proved Ward had participated in numerous robberies. In view of Nolen's admitted participation in only one robbery and Ward's participation in numerous robberies, we cannot say the trial judge erred in concluding the trier of fact would not be swayed by Ward's recollection, which differed from Nolen's confession. When "evaluated in the context of the entire record, . . . we cannot say to a reasonable probability that the result of the proceeding would have been different had [Ward's statement] been disclosed." Id. at 227, 562 S.E.2d at 709. We hold that the failure to disclose Ward's statement was insufficient to undermine the confidence of the outcome of the trial and that the error was immaterial.

IV.

When the issue of the sufficiency of the evidence is raised "[o]n appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted). So viewed, Nolen confessed his involvement in the robbery. He told a detective that he was the driver and knew the robbery would occur. In particular, Nolen said he, Ward, and Larry Mabry took Miller to the Final Frontier bar. Nolen also said he and the other men "were going to wait for [Miller] to bring a guy back so they could rob him." As the trial judge noted, Nolen mentioned facts about the robbery that

-

are "only known to someone who did take part in the crime."
Moreover, Miller's testimony and Lassiter's testimony
corroborated the details of Nolen's confession.

Nolen contends the evidence against him was based on the
testimony of an unreliable witness.  Specifically, he questions
Miller's drug problems, her history of lying, and her incentives
for lying.  "The credibility of the witnesses and the weight
accorded the evidence[, however,] are matters solely for the
fact finder who has the opportunity to see and hear that
evidence as it is presented."  Sandoval v. Commonwealth, 20
Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).  The testimony of
Miller, which the trial judge found "very credible," was
sufficient to prove beyond a reasonable doubt that Nolen was a
participant in the crime.  According to Miller's testimony,
which was strikingly similar to Nolen's own confession, Nolen
was in her apartment when the robbery scheme was planned.  He
was in the car that delivered Miller to the bar where she sought
and found men to rob.  Later, Nolen drove Miller's car to the
pre-arranged site and was among the three masked individuals
that robbed Lassiter.  During the robbery, Miller heard Nolen
say: "Hold it right there, baby boy.  Give it up."

From Nolen's confession, Miller's testimony, and Lassiter's
testimony the trial judge could conclude beyond a reasonable
doubt that Nolen conspired to commit robbery, committed the

robbery, and used a firearm in the robbery.  Therefore, we affirm the convictions.

<u>Affirmed</u>.