COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Frank and Clements
Argued at Alexandria, Virginia


VICTOR HUGO FRONTANILLA
                                            OPINION BY
v.    Record No. 0631-01-4         JUDGE ROBERT P. FRANK
                                             MAY 7, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                Benjamin N. A. Kendrick, Judge

          Frank G. Soulier for appellant.

          Virginia B. Theisen, Assistant Attorney
          General (Randolph A. Beales, Attorney
          General, on brief), for appellee.


     Victor Hugo Frontanilla (appellant) was convicted in a jury

trial of forging a public record, in violation of Code § 18.2-168,

and driving on a suspended license, in violation of Code

§ 46.2-301.  On appeal, he contends the trial court erred in

denying his motion for a new trial, claiming the prosecution

failed to disclose exculpatory material prior to trial.  For the

reasons given, we affirm the convictions.

                          BACKGROUND

     On February 19, 2000, at about 1:45 a.m., Arlington Police

Officer Tracy Reiten observed a Toyota Celica with an altered

temporary license tag.  Officer Reiten stopped the car and

observed a male driver and two female passengers.  Reiten

testified the driver "looked familiar" to her at the time of the stop.

The driver said he did not have his driver's license with him nor did he have any other identification or the vehicle's registration papers. The driver said his name was Carlos Angulo. He stated his birthday was February 20, 1974, and he did not know his social security number. He told the officer his address was 5118 Columbia Pike, Apartment 2, in Arlington. The driver indicated he owned the Toyota.

Reiten attempted to run the driver's information through the DMV computer, but the computer was not functioning properly. She asked the dispatcher to run the name and date of birth through the police department's local records management system (RMS). The RMS had no information on "Carlos Angulo."

According to Reiten, the stop occurred in a well-lit area. The headlights of her police car were illuminated, and she used her flashlight. The driver initially remained in his car for five to ten minutes. The officer then brought the driver to the back of the car to point out the altered rear tag. The officer also talked to the driver at the front of her vehicle. Reiten stood "a couple" of feet away from the driver during these conversations. Reiten estimated the stop lasted about twenty minutes.

Officer Reiten issued two summonses to the driver, one for driving without an operator's license and the other for possession of altered temporary tags. The driver signed the summonses with

-

the name "Carlos Angulo."  The officer did not take the driver

into custody because the police department was short-staffed that

night, and she did not believe she had time to effect and process

an arrest.  The car was impounded, and the driver and two

passengers left the area on foot.

When she returned to the police station, Officer Reiten ran

the name "Carlos Angulo" through the DMV computer and found no

record, which meant no one with the name "Carlos Angulo" had a

valid Virginia operator's license.  The officer then searched

through the RMS for "Carlos Angulo."  The only "Carlos Angulo"

found in the system was fifty-two years old.  Reiten knew this

Carlos Angulo was not the driver she had stopped.

Next, Reiten did a computer search using the address provided

by the driver.  The name response for that address was Victor

Frontanilla.  When the officer used that name in a computer

search, she received a physical description consistent with the

driver she had stopped that morning.  The birth date reported by

the computer for Frontanilla was just six days from the birth date

given by the driver.

Officer Reiten obtained recent photographs of Frontanilla,

appellant here, from the police identification unit.  Upon viewing

the photographs, she concluded appellant was the man she had

stopped thirty minutes earlier.

After recognizing appellant as the driver, Reiten went to the

"Third District cubicle" to determine why appellant "appeared

-

familiar to [her]." There, she saw a poster with appellant's picture. The poster had been there since December, and Officer Reiten had seen it a number of times. The poster noted appellant lived at 5118 S. Columbia Pike, Apartment 2, and drove a light blue Toyota. Reiten denied recalling the poster at the time of the stop.

Officer Reiten testified unequivocally that the person she stopped on February 19, 2000 was appellant. On cross-examination, she testified that another officer was present at the stop as back-up, but she did not recall the name of that officer. Appellant's counsel did not pursue any additional cross-examination concerning the identity of the other officer.

Appellant testified that he lent Carlos Angulo his car. He maintained Angulo, not appellant, was the driver stopped by Officer Reiten. Appellant produced other witnesses who corroborated his testimony.

Following the trial, appellant filed a motion seeking dismissal of the charges or a new trial, based on suppression of exculpatory evidence. Appellant's motion alleged that the Commonwealth's attorney told him, prior to trial, that Officer Reiten was the only officer at the scene during the stop. Appellant claimed, if he had known prior to trial that other officers were present, he would have subpoenaed those officers, "who could both dispel the identification of the defendant by [O]fficer Reiten as well as be used for impeachment of said

-

officer."  At the hearing on the motion, appellant indicated the relief sought was a new trial, not dismissal of the charges.

At the hearing on the motion, none of the officers testified, but the Commonwealth represented to the court that they could give general descriptions of the driver, matching appellant's appearance as to ethnicity, height, weight, and age.  None of them were comfortable, however, making a positive, in-court identification of appellant.

The Commonwealth proffered that these officers had duties at the scene other than focusing on the driver.  One officer focused on the passengers.  Another officer was a recruit, who exited the police car only briefly.  One officer was assigned to remove the altered license tag.  The prosecutor did not show a photo array to any of these officers.  Appellant did not oppose the proffer.[1]

The Commonwealth's attorney denied telling appellant's counsel prior to trial that no other officers were present.

The trial court ruled that the disclosure of information regarding other officers would result merely in "speculation" and "possibility."  The court ruled the evidence was not exculpatory and did not suggest a reasonable probability of a different result if disclosed.  The court denied the motion for a new trial.

---

[1] From the proffer, it is unclear whether there were two or three officers at the stop, in addition to Officer Reiten.

ANALYSIS

On appeal, appellant contends the presence of three police officers at the scene was exculpatory because it contradicted Reiten's "recollection of matters at the time of the traffic stop." He asserts the prejudice he suffered "was his inability to impeach Officer Reiten's certainty of identification, recollection of the incident and credibility in presenting the case for prosecution."

Due process requires that the Commonwealth disclose all material exculpatory evidence to an accused. Jefferson v. Commonwealth, 27 Va. App. 477, 486, 500 S.E.2d 219, 224 (1998) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963); Stover v. Commonwealth, 211 Va. 789, 795, 180 S.E.2d 504, 509 (1971)). Exculpatory evidence is evidence that is favorable to the accused and includes impeachment evidence. United States v. Bagley, 473 U.S. 667, 676 (1985); Robinson v. Commonwealth, 231 Va. 142, 150, 341 S.E.2d 159, 164 (1986). The withholding of information from a defendant constitutes a Brady violation when the information is "(1) either directly exculpatory or [has] impeachment value, (2) suppressed by the government, and (3) material." Lockhart v. Commonwealth, 34 Va. App. 329, 345, 542 S.E.2d 1, 8 (2001) (citing Strickler v. Greene, 527 U.S. 263, 280-81 (1999)).

"The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley,

-

473 U.S. at 682. "'A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" Soering v. Deeds, 255 Va. 457, 464, 499 S.E.2d 514, 517 (1998) (quoting Bagley, 473 U.S. at 682). Therefore, appellant "must show that when the case is evaluated in the context of the entire record, including the omitted evidence, a jury would have entertained a reasonable doubt" as to appellant's guilt. Id. "The mere possibility that an item of undisclosed information might have helped the defense . . . does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-10 (1976). "The materiality inquiry is a context-specific determination; evidence that is material in one setting could be immaterial in another." Lockhart, 34 Va. App. at 346, 542 S.E.2d at 9.

The record fails to show the undisclosed information was material. Based on this record, we cannot say to a reasonable probability that the result of the proceeding would have been different had the information been disclosed and had the other officers testified. See Bagley, 473 U.S. at 682.

The evidence of additional back-up officers at the scene of the stop would have had a minimal effect on the credibility of Officer Reiten's positive identification of appellant. First, she based her identification of appellant on her lengthy encounter with the driver, which occurred under favorable

-

lighting conditions.  She knew he looked familiar when she was talking to him.

Within thirty minutes of this encounter, Officer Reiten identified appellant as the driver from a photo provided by her department.  Appellant lived at the address that the driver gave to the officer, and the date of birth given by the driver was only six days different from appellant's date of birth.

Appellant also matched the description of the driver, even according to the non-testifying officers.  On the other hand, the testimony indicated the "real" Angulo was fifty-two years old, twice the age given by the driver.

In arguing materiality, appellant contends the other officers could have dispelled the identification by Officer Reiten.  The accepted proffer of their testimony belies this argument.

The other officers were not at the scene "to focus on" appellant, but instead served as "back-up officers."  One officer "was focusing more on those other two [passengers] for the safety of the primary officer."  One officer was "assigned . . . to actually taking the [altered] plate."  One officer, a recruit, got out of the police vehicle only briefly, but "was observing from in the car."  He could generally describe the driver, but was "not necessarily" paying particular attention to him.

-

While these officers were not comfortable identifying appellant in court, they could have corroborated Officer Reiten's general description of the driver, which matched appellant's height, general weight, age, gender, and ethnicity.

Nothing in the record suggests these back-up officers could have dispelled Officer Reiten's unequivocal identification of appellant. They could not specifically identify the driver, nor could they testify that appellant was not the driver. Their testimony would not have impeached Reiten's ability to remember, as their recollections of the driver did not contradict Reiten's testimony. In fact, their testimony would have supported Reiten's identification of appellant, not Angulo, as the driver.

Appellant argues that testimony regarding these officers' presence at the scene would have impeached Reiten's ability to remember because Reiten indicated only one officer was present. However, the record does not support this allegation.

The defense attorney asked Reiten, "Did you – when you stopped him for the summons – whether it's Mr. Angulo or Mr. Frontanilla, did another officer come out for back up?" Reiten responded, "yes." When asked, "Who was that," the officer testified she could not recall. As the trainee was not at the scene as back-up and remained in the other police car, and the record is unclear whether two or three additional officers were present, Reiten's responses truthfully indicated to the jury her ability to remember the encounter with appellant.

-

Considering the undisclosed information together with the evidence adduced at trial, the record does not establish a Brady violation, nor would the undisclosed evidence "'"have put the whole case in such a different light as to undermine confidence in the verdict."'" Lockhart, 34 Va. App. at 346, 542 S.E.2d at 9 (quoting Strickler, 527 U.S. at 289-90 (quoting Kyles v. Whitley, 514 U.S. 419, 434-35 (1995))). Any "damage" to Officer Reiten's credibility would have been, at the most, minimal.

Even if the undisclosed information was material, we would affirm the trial court's decision. To find a Brady violation, appellant must be prejudiced by suppression of the information. No such prejudice occurred here.

> So long as exculpatory evidence is obtained in time that it can be used effectively by the defendant, and there is no showing that an accused has been prejudiced, there is no due process violation. Read v. Virginia State Bar, 233 Va. 560, 564, 357 S.E.2d 544, 546-47 (1987). It is the defendant's ability to utilize the evidence at trial, and not the timing of the disclosure, that is determinative of prejudice. See Robinson v. Commonwealth, 231 Va. 142, 152, 341 S.E.2d 159, 165 (1986).

Moreno v. Commonwealth, 10 Va. App. 408, 417, 392 S.E.2d 836, 842 (1990).

Here, during cross-examination, appellant discovered that at least one other officer was present at the scene. Officer Reiten testified another officer was present and admitted she could not recall the identity of that officer. Any additional

-

testimony regarding the trainee and any back-up officers would have been cumulative of the point already made at trial, namely, that Reiten had an incomplete recollection of collateral events at the scene.

Appellant maintains the failure to disclose this information prejudiced his ability to challenge Officer Reiten's recollection of events. However, appellant could have made that very challenge based on the evidence presented at trial. Appellant could have pointed out to the jury that, while the officer was certain of her identification of appellant, by her own admission she could not recall the identity of her fellow officers. This impeachment argument could have been made, but was not.

When appellant learned at trial of the so-called "exculpatory" evidence, he failed to "bring the matter to the court's attention," by way of a motion for mistrial, for a continuance, or for any other relief.[2] See Graham v. Commonwealth, 250 Va. 79, 87-88, 459 S.E.2d 97, 101 (1995) (noting such failure "waive[s] the point"). We conclude that appellant was not prejudiced by the Commonwealth's failure to disclose prior to trial that other officers were present at the scene.

---

[2] Appellant did not make a motion for a new trial until after the jury was dismissed.

-

The trial court did not err in denying appellant's motion for a new trial.  Therefore, we affirm the convictions.

<u>Affirmed.</u>