COURT OF APPEALS OF VIRGINIA

Present: Judges Kelsey, McClanahan and Haley
Argued at Chesapeake, Virginia

ANDRE CORTEZ GADDIE

                                                      MEMORANDUM OPINION[*] BY

v.       Record No. 1155-09-1                JUDGE D. ARTHUR KELSEY
                                                       JUNE 22, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Louis A. Sherman, Judge

Curtis T. Brown for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(William C. Mims, Attorney General, on brief), for
appellee.


A jury convicted Andre Cortez Gaddie of first-degree felony murder, lynching by mob, two counts of malicious wounding, three counts of robbery, and six counts of possessing a firearm while committing those felonies. Gaddie challenges his murder and lynching-by-mob convictions, claiming he cannot be convicted of both based upon the same conduct. Gaddie also challenges all of his convictions, arguing the prosecutor violated his duty to timely provide exculpatory information and produce the defendant's prior statements pursuant to a pretrial discovery order. Finding no merit in these arguments, we affirm.

I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). This principle

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted).

So viewed, the evidence proved Gaddie belonged to the Bounty Hunter Bloods, a notorious gang with a chapter in the Ocean View area of Norfolk. One evening in July 2007, while armed with a handgun, Gaddie and another gang member, armed with a shotgun, approached three men and put guns to their heads while ordering them to the ground. While the men were lying on the ground, Gaddie and several other gang members kicked and stomped them, beat them with their guns and hands, and robbed them. One of the victims, James Robertson, was beaten so badly he later died as a result of his injuries.

At trial, Gaddie objected to the admission into evidence of a statement he made to jail classification personnel admitting he was a gang member. This statement, Gaddie asserted, had not been disclosed prior to trial in compliance with a pretrial discovery order. The trial court initially denied its admission, but later admitted the statement after the Commonwealth proved the statement had been presented at the preliminary hearing. Gaddie also objected to the testimony of several witnesses on the ground that the prosecutor had not timely provided impeachment information to counsel prior to trial. The trial court denied his objections.

A jury found Gaddie guilty of first-degree felony murder, lynching by mob, two counts of malicious wounding, three counts of robbery, and six counts of possessing a firearm while committing those felonies. After trial, Gaddie moved to vacate his murder and lynching-by-mob convictions arguing one death could not result in two murder convictions. The trial court denied the motion, reasoning that the two offenses had dissimilar elements.

II.

### A.  MURDER & LYNCHING-BY-MOB CONVICTIONS

On appeal, Gaddie conspicuously avoids any mention of double jeopardy principles as he challenges his simultaneous convictions for felony murder and lynching by mob.  He also specifically faults the trial court for applying Blockburger v. United States, 284 U.S. 299 (1932), to his case.  See Appellant's Br. at 8; Oral Argument at 2:49.  Instead, Gaddie limits his argument to the proposition that "there is no statutory authority for Gaddie to be convicted and punished for first-degree murder and lynching by mob."  Appellant's Br. at 7.[1]  Though we are tempted to offer a tart reply (yes there is — Code § 18.2-32 authorized the felony murder conviction and Code § 18.2-40 authorized the lynching-by-mob conviction), we must acknowledge that underlying Gaddie's argument is a conceptual subtlety not of his own making.

"In a simultaneous prosecution, the role of the Double Jeopardy Clause is 'limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.'"  De'Armond v. Commonwealth, 51 Va. App. 26, 32-33, 654 S.E.2d 317, 320 (2007) (citation omitted).  "The multiple punishments prohibition, therefore, remains from start to finish wholly dependent on statutory interpretation."  Id. at 33, 654 S.E.2d at 320 (citing John L. Costello, Virginia Criminal Law & Procedure § 51.3-4, at 688-90 (3d ed. 2002)).  Thus, "the question of what punishments are constitutionally permissible is no different from the question of what punishments the Legislative Branch intended to be imposed." Missouri v. Hunter, 459 U.S. 359, 368 (1983) (citation and internal bracket omitted); Albernaz v. United States, 450 U.S. 333, 344 (1981); Whalen v. United States, 445 U.S. 684, 688 (1980).

---

[1] Gaddie concedes his actions could "meet [the] elements" of both lynching by mob and felony murder and that he could "be guilty of both crimes," but maintains statutory authority does not exist to charge and convict him of both crimes.  See Oral Argument at 7:35.

In this context, the <u>Blockburger</u> test is simply a "rule of statutory construction" used to inform the constitutional issue. <u>Whalen</u>, 445 U.S. at 691; <u>see also</u> <u>Hunter</u>, 459 U.S. at 366. It asks whether each statutory offense requires proof of a fact that the other does not. "The assumption underlying the rule is that [the legislature] ordinarily does not intend to punish the same offense under two different statutes." <u>Whalen</u>, 445 U.S. at 691-92. The very presence of dissimilar elements within the two statutory offenses, <u>Blockburger</u> reasons, provides "a clear indication of contrary legislative intent." <u>Id.</u> at 692.

Even so, the dissimilar-element test of <u>Blockburger</u> is not the *only* way to determine the legislature's intent. If the legislature expressly declares its will to inflict multiple punishments on the same conduct, the courts must respect its intent to do so — even if the two statutory offenses fail the <u>Blockburger</u> test. <u>See</u> <u>Hunter</u>, 459 U.S. at 368; <u>Dalo v. Commonwealth</u>, 37 Va. App. 156, 554 S.E.2d 705 (2001), <u>aff'd</u>, 264 Va. 431, 570 S.E.2d 840 (2002).

> Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct . . . , a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

<u>Hunter</u>, 459 U.S. at 368-69; <u>United States v. Martin</u>, 523 F.3d 281, 290-91 (4th Cir. 2008) ("Of course, if the statutory language allows multiple punishments, then there is no double jeopardy problem and we need not go any further.").[2]

---

[2] We acknowledge that <u>Payne v. Commonwealth</u>, 277 Va. 531, 674 S.E.2d 835 (2009), seems to follow a different track. <u>Payne</u> begins its analysis by concluding: "Clearly, the language in Code § 18.2-36.1(C) stating that '[t]he provisions of this section shall not preclude prosecution under any other homicide statute' expresses the legislative intent for multiple punishments." <u>Id.</u> at 539, 674 S.E.2d at 839. <u>Payne</u> then inexplicably turned to what it appeared to view as a separate issue: "We *next* must discern [under the <u>Blockburger</u> test] whether the convictions and punishments for aggravated involuntary manslaughter and felony murder, which both stem from the death of one victim, violate the double jeopardy provision of the Fifth Amendment to the United States Constitution." <u>Id.</u> at 540, 674 S.E.2d at 839 (emphasis added).

With these background principles, we return to Gaddie's argument. He claims the General Assembly did not intend the felony murder statute, Code § 18.2-32, and the lynching-by-mob statute, Code § 18.2-40, to be used simultaneously to inflict multiple punishments for the same conduct. He correctly points out that neither statute *expressly* provides that it can be used cumulatively with other statutes to punish the same behavior. He concludes that in the absence of such express statutory authorization, the court must infer the legislature does not intend to authorize multiple punishments for a single criminal act. See Oral Argument at 5:56, 7:16, 10:49. Though he concedes that he knows of no caselaw supporting this interpretation, Oral Argument at 8:36, he faults the trial court for employing the Blockburger test to determine if the General Assembly *implicitly* precludes multiple punishments. See Appellant's Br. at 8; Oral Argument at 2:59.

We find no fault with the trial court's invocation of the Blockburger test. It is just the right "rule of statutory construction," Hunter, 459 U.S. at 367 (citation omitted), to discern legislative intent in the absence of an express declaration. Applying Blockburger to this case, we find both the felony murder statute, Code § 18.2-32, and the lynching-by-mob statute, Code § 18.2-40, include at least one element the other does not — a conclusion Gaddie does not contest.[3]

For this reason, we presume the General Assembly did not intend either statute to displace the other in a simultaneous prosecution for the same underlying conduct — a conclusion that has been reached in analogous circumstances. See, e.g., Winston v. Commonwealth, 268

---

We cannot reconcile the two-step analysis of Payne with the one-step analysis of Hunter, 459 U.S. 359.

[3] The provision in Code § 18.2-32 punishing felony murder requires proof of a specific underlying felony (*e.g.*, arson, rape, forcible sodomy, inanimate or animate object sexual penetration, robbery, burglary or abduction), a requirement not found in the lynching-by-mob

Va. 564, 613-15, 604 S.E.2d 21, 49-50 (2004) (permitting two capital murder convictions based on death of one person); Payne v. Commonwealth, 257 Va. 216, 227-29, 509 S.E.2d 293, 300-01 (1999) (permitting four capital murder convictions and four death sentences for killing two victims); Payne v. Commonwealth, 52 Va. App. 120, 129, 661 S.E.2d 513, 517 (2008), aff'd, 277 Va. 531, 674 S.E.2d 835 (2009) (permitting convictions for felony homicide under § 18.2-33 and aggravated involuntary manslaughter under § 18.2-36.1(B) for killing one victim).

### B. TIMELINESS OF BRADY-IMPEACHMENT DISCLOSURES

Relying on Brady v. Maryland, 373 U.S. 83 (1963), Gaddie argues the trial court erred by allowing the prosecution to provide impeachment information to his counsel during trial, just prior to the testimony of various witnesses. The impeachment information included criminal histories, plea agreements, and conviction orders of accomplices convicted in separate trials. Gaddie's brief on appeal lacks sufficient detail for us to discern the exact scope of his argument. We need not take upon ourselves, however, the task of teasing these details from the trial court record because several general points wholly suffice to resolve Gaddie's argument on appeal.

"To find a Brady violation, appellant must be prejudiced by suppression of the information." Frontanilla v. Commonwealth, 38 Va. App. 220, 229, 562 S.E.2d 706, 710 (2002). "So long as exculpatory evidence is obtained in time that it can be used effectively by the defendant, and there is no showing that an accused has been prejudiced, there is no due process violation." Id. (quoting Moreno v. Commonwealth, 10 Va. App. 408, 417, 392 S.E.2d 836, 842 (1990), in turn quoting Read v. Virginia State Bar, 233 Va. 560, 564, 357 S.E.2d 544, 546-47 (1987)). Consequently, "[i]t is the defendant's ability to utilize the evidence at trial, and not the timing of the disclosure, that is determinative of prejudice." Id. (citation omitted).

---

statute. And Code § 18.2-40, the lynching-by-mob statute, requires proof of a "mob" action, an element not required by the felony murder statute.

In this case, Gaddie cannot establish prejudice for two reasons. First, at no point during the trial did Gaddie seek a continuance claiming untimely disclosure.[4] Nor did he request a mistrial. No <u>Brady</u> violation can occur where, as here, the defendant does "not request a continuance in light of the late disclosure and offered no explanation as to how his trial tactics might have been different if this statement had been disclosed before trial." <u>Knight v. Commonwealth</u>, 18 Va. App. 207, 215, 443 S.E.2d 165, 170 (1994).[5] Second, during trial, Gaddie's counsel effectively used impeachment information to cross-examine the witnesses. <u>See</u> <u>Read</u>, 233 Va. at 565, 357 S.E.2d at 546-47 (concluding "<u>Brady</u> is not violated when <u>Brady</u> material is available to defendants during trial" (citation omitted)).[6] Under such circumstances,

---

[4] To be sure, the day before trial, the Commonwealth requested a continuance, suggesting three of the witnesses who would testify at trial had testified in other proceedings, but the transcripts were not yet available. The Commonwealth proffered: "Without having those transcripts, it seems difficult to understand how [defense counsel] is going to effectively cross-examine those witnesses." Gaddie's counsel replied: "We are ready to go to trial. . . . Whoever is going to testify, if the transcript isn't available, those are the consequences that we have to take."

[5] <u>See</u>, <u>e.g.</u>, <u>United States v. Collins</u>, 415 F.3d 304, 310-11 (4th Cir. 2005) (finding no <u>Brady</u> prejudice in part because defendant did not request a continuance); <u>Frye v. Commonwealth</u>, 231 Va. 370, 384, 345 S.E.2d 267, 277 (1986) (holding, under analogous prejudice principles governing Rule 3A:11 disclosures, defendant "failed to move for a continuance or even for a recess in order to consider the material" and thus cannot "now be heard to complain that he had insufficient time to prepare for trial"); <u>Davis v. Commonwealth</u>, 230 Va. 201, 204, 335 S.E.2d 375, 377 (1985) (finding no prejudice under Rule 3A:11 where defendant "did not request either a postponement or a continuance"); <u>Frontanilla</u>, 38 Va. App. at 230, 562 S.E.2d at 711 (noting defendant failed to bring <u>Brady</u> argument to the court's attention "by way of a motion for mistrial, for a continuance, or for any other relief").

[6] <u>See</u>, <u>e.g.</u>, <u>Correll v. Commonwealth</u>, 232 Va. 454, 465-66, 352 S.E.2d 352, 358-59 (1987) (finding no prejudice because the defense effectively cross-examined the witness using the impeachment material); <u>see</u> <u>also</u> <u>Lovitt v. Warden</u>, 266 Va. 216, 247, 585 S.E.2d 801, 819 (2003); <u>Coley v. Commonwealth</u>, 55 Va. App. 624, 632, 688 S.E.2d 288, 292 (2010) (noting "appellant had the opportunity to cross-examine" on the impeachment point); <u>Lockhart v. Commonwealth</u>, 34 Va. App. 329, 346-47, 542 S.E.2d 1, 9 (2001) (observing that "victim was subjected at trial to substantial impeachment on the details of his story"); <u>Jones v. Commonwealth</u>, 32 Va. App. 30, 45-46, 526 S.E.2d 281, 288-89 (2000) (finding the defense "was able to cross-examine [the witness] effectively," and thus, "no un-admitted evidence of impeachment value" was omitted); <u>Moreno v. Commonwealth</u>, 10 Va. App. 408, 419-20, 392

Gaddie cannot show that any alleged untimeliness in the disclosure of the <u>Brady</u> impeachment materials prejudiced his defense.

### C. <u>VIOLATION OF RULE 3A:11(b)(1) DISCOVERY ORDER</u>

At trial, the Commonwealth introduced a statement by Gaddie in which he admitted to jail classification personnel he was a gang member. Gaddie objected, claiming it had not been previously disclosed as required by the pretrial discovery order entered pursuant to Rule 3A:11(b)(1). The trial court overruled the objection after the prosecutor produced a transcript proving the statement had been presented to the court during a prior bond hearing in the presence of Gaddie and his counsel.

The Commonwealth correctly points out, however, that even if the prosecutor technically violated the Rule 3A:11(b)(1) discovery order, Gaddie cannot demonstrate prejudice. "To show prejudice, the defendant must demonstrate how timely disclosure would have changed his trial strategy or affected the outcome of the trial." <u>Smoot v. Commonwealth</u>, 37 Va. App. 495, 502, 559 S.E.2d 409, 412-13 (2002).[7] Both Gaddie and his counsel were made aware of the gang statement long before trial. Whether they had a copy of the jail classification document recording the statement (a point disputed at trial) is insignificant. They knew or should of known

---

S.E.2d 836, 844 (1990) (finding no <u>Brady</u> violation where "accused receives information before or at trial and is able to use it effectively").

[7] <u>See</u> <u>Davis</u>, 230 Va. at 204, 335 S.E.2d at 377 (holding that to demonstrate prejudice from the nondisclosure of inculpatory evidence, defense counsel must "suggest to the trial court how their earlier disclosure would have benefited [defendant's] defense or altered the course of the trial"); <u>Knight</u>, 18 Va. App. at 215, 443 S.E.2d at 170 (holding that to demonstrate prejudice from the late disclosure of inculpatory evidence, defendant must show, at minimum, "how his trial tactics might have been different if [the evidence] had been disclosed before the trial"); <u>Conway v. Commonwealth</u>, 12 Va. App. 711, 716, 407 S.E.2d 310, 312-13 (1991) (observing that the admission of nondisclosed evidence is reversible error only upon a showing that the nondisclosure prejudiced defendant).

of its existence and could not justly claim surprise at trial.  The trial court, therefore, did not err in overruling Gaddie's objection to the admission of the statement into evidence.

III.

In sum, we find no statutory or constitutional error in Gaddie's simultaneous convictions for felony first-degree murder and lynching by mob.  We also hold Gaddie has shown no prejudice in support of his assertions that the prosecutor violated his disclosure obligations under either <u>Brady</u> or the pretrial discovery order.  We thus affirm Gaddie's convictions.

<u>Affirmed.</u>