COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, AtLee and Chaney
Argued at Norfolk, Virginia


JONATHAN O. MAYO, S/K/A
 JONATHAN O'NEIL MAYO
                                                    MEMORANDUM OPINION* BY
v.       Record No. 0821-21-1                       JUDGE RANDOLPH A. BEALES
                                                    MAY 24, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Timothy S. Fisher, Judge

Charles E. Haden for appellant.

Sharon M. Carr, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, appellant Jonathan Mayo was convicted of one count of object sexual

penetration of a victim under age thirteen, in violation of Code § 18.2-67.2(A)(1), and one count of

aggravated sexual battery of a victim under age thirteen, in violation of Code § 18.2-67.3(A)(1).

Mayo received a sentence of fifty-three years of imprisonment with thirty-five years suspended for a

total active sentence of eighteen years.  On appeal, Mayo challenges his convictions on the basis

that the victim's testimony was inherently incredible and uncorroborated.  He also contends that the

trial court erred in denying his eleven post-trial motions.

I.  BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, [as] the prevailing party at trial."  *Scott v.*

*Commonwealth*, 292 Va. 380, 381 (2016) (citing *Baldwin v. Commonwealth*, 274 Va. 276, 278

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(2007)).  At trial, Mayo's stepdaughter, who is the victim[1] in this case, testified that Mayo began inappropriately touching her around the summer of 2009.  She testified that one of the incidents of sexual abuse that stuck out most in her memory was "the first time that he [Mayo] had ever stuck anything inside of" her and that it occurred when she was approximately seven or eight years old.

One night between May 1, 2010 and May 31, 2011, Mayo (who was around twenty-three or twenty-four years old) entered the victim's bedroom after she had gone to bed.  She testified that Mayo sat down close beside her on her twin-sized bed, "pulled [her] legs apart and kind of rolled" her from her side onto her back, pulled off her underwear, and began touching her with his hands and with his penis.  He inserted his finger into her vagina, moving his finger in and out more than once.  According to the victim, "it just hurt.  It was like pressure."  Mayo also touched her leg with his penis "because he was masturbating while he was touching [her]."  He then ejaculated onto the child's leg.  She recalled that she felt a "warm," "slimy and gooey" liquid on her leg.  Mayo wiped the liquid off and pulled up the child's underwear before he finally left the room.  After Mayo left her room, the victim said that she "laid back on [her] side and went back to bed."  The child did not immediately disclose this incident of sexual abuse because she said that Mayo and her mother were in a relationship, because "he was supposed to be like a father to" her, and because she was "just scared."

Indeed, at the time of the sexual assault, Mayo was married to the victim's mother.  Mayo, the victim, her mother, and her younger sister lived together in the same townhouse that was located in Newport News.  The child's aunt also lived with them there for a while.  While her aunt lived with them, the victim and her sister shared a bedroom.

---

[1] We refer to her as "the victim" or "the child" throughout our opinion in an attempt to better protect her privacy.

In 2012, an incident occurred between the victim's younger sister and a neighborhood boy, which resulted in Child Protective Services ("CPS") interviewing the victim in this case. During the interview, the CPS interviewer asked her whether she had been inappropriately touched by anyone. The victim responded, "No." At trial, the victim stated that she was not honest in this interview, but she explained that she was not "comfortable telling anybody at the time"—and that the reason for the CPS interview related to her sister and the neighborhood boy and had nothing to do with her or Mayo.

In November 2016, the victim overheard Mayo and her mother discussing the possibility of having Mayo become a part of their lives again in order to be more present for her younger siblings. Her mother later asked her how she would feel if Mayo came back. She testified that the thought of Mayo coming back into their lives frightened her. She also said that she was "angry, hurt, [and] sad" by the prospect of having Mayo come back into her life, and she was worried that Mayo might sexually abuse her sisters. For the next few days she was "riled up" and angry with her mother, until the two of them ended up getting into a huge argument. During this confrontation with her mother, she finally revealed to her mother that Mayo had sexually abused her.

Her mother then called the police, and an investigation ensued. While the child had not provided her mother any details, the details of the abuse became clear during subsequent interviews. Mayo was then indicted in the Circuit Court of the City of Newport News on one count of object sexual penetration of a victim under age thirteen and one count of aggravated sexual battery of a victim under thirteen. At a pre-trial conference on January 3, 2020, Mayo requested that the

Commonwealth provide him all exculpatory evidence.[2] Mayo exercised his right to a jury trial, and *voir dire* began on January 7, 2020.[3]

Mayo, who chose to represent himself at trial (although there was an attorney standing by to assist him if Mayo so chose), cross-examined the victim at length. He essentially went line by line through the accounts she had given at previous interviews, highlighting inconsistencies in her accounts as well as the fact that she previously had denied having been inappropriately touched.

The Commonwealth also called Jennifer Howe, an expert in child sexual abuse and forensic interviewing, to testify about how children often report sexual abuse. Ms. Howe testified that the reporting process varies for each child: "We almost always find that there's some sort of delay [in] disclosure," as children rarely tell others about these kinds of experiences right away. She added that the length of this delay "just depends on what's going on in that child's life." Furthermore, she confirmed that variations occur when children recount their experiences.

After the Commonwealth rested, Mayo made a motion to strike contending that the evidence was insufficient to convict him of object sexual penetration and aggravated sexual battery. The trial court denied the motion. Thereafter, Mayo renewed his motion to strike based on insufficiency of the evidence, which the trial court again denied. On January 9, 2020, after three

---

[2] On January 6, 2020, the Commonwealth was informed as to the existence of a medical record by Dr. Michelle Clayton from December 2016 in which she concluded that the victim's hymenal and genital examination were normal and that this "neither confirms nor excludes the possibility of sexual abuse." The Commonwealth disclosed this information to Mayo and provided him a copy of that report the morning of January 7, 2020, before *voir dire* began. However, when the trial court asked if Mayo wanted to secure Dr. Clayton as a witness for trial, Mayo responded, "No, thank you[.]"

[3] The trial judge, the Commonwealth, and Mayo asked questions of the potential jurors. Several jurors were excused for cause. Mayo chose not to object to any jurors after questioning them. He informed the trial court that he had no motions to make and that he was "ready to go." Mayo did not object to the empaneling of the jury as a whole either.

- 4 -

days of trial, the jury found Mayo guilty of both the count of object sexual penetration and the count of aggravated sexual battery.

After the jury rendered its verdict but before Mayo's final sentencing order was entered, Mayo made a number of post-trial motions. These included: (1) a motion to set aside the verdict, (2) a motion to dismiss alleging insufficient indictments, (3) a motion for expert testimony, (4) a motion to dismiss alleging prosecutorial misconduct, (5) a second motion to dismiss alleging prosecutorial misconduct, (6) a motion for summary judgment, (7) a motion for a new trial, (8) a motion to dismiss alleging improper constructive amendment of an indictment, (9) a motion to dismiss alleging a *Brady* violation, (10) a motion to dismiss for improper venue, and (11) a motion to dismiss for want of jurisdiction. The trial court denied all of these motions. Ultimately, the trial court sentenced Mayo to forty years of imprisonment (with thirty-five years suspended) for object sexual penetration and to thirteen years of imprisonment and a fine of $50,000 for aggravated sexual battery. Mayo then appealed to this Court.

## II. ANALYSIS

Mayo's two assignments of error on appeal are as follows. First, Mayo argues,

> The trial court erred in denying Mayo's motion to strike the charges of object sexual penetration and aggravated sexual battery, where the complainant failed to report the matter to police or tell anyone about her allegations for at least five years, where her accusation[s] were uncorroborated by any eyewitness, any forensic or medical evidence, or any confession or incriminating statements by the Defendant, and where her accounts of the alleged incident contained many contradictions and discrepancies.

Second, Mayo claims, "The trial court erred in denying Mayo's eleven post-trial motions[.]"

A. Motion to Strike & Post-Trial Motion 1(Motion to Set Aside the Verdict)[4]

On appeal, Mayo does not contend that the victim's testimony fails to establish any of the elements of the offenses for which he was convicted. Instead, he contends that the evidence was insufficient to prove that he committed object sexual penetration and aggravated sexual battery of a victim under age thirteen because "the Commonwealth's evidence failed to exclude the hypothesis of innocence that [the child] simply lied" and "[b]ecause [her] testimony is so inherently incredible and contrary to human experience as to render it unworthy of belief."

### 1. Standard of Review

"The standard of appellate review for a challenge to the sufficiency of the evidence is the same at the close of all the evidence and in a motion to set aside the jury verdict." *Parson v. Miller*, 296 Va. 509, 523 (2018) (citing *Bitar v. Rahman*, 272 Va. 130, 141 (2006)). When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Crowder v. Commonwealth*, 41 Va. App. 658, 663 (2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," *Riner v. Commonwealth*, 268 Va. 296, 330 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" *Crowder*, 41 Va. App. at 663 (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

---

[4] Mayo's argument concerning the trial court's denial of his motion to strike and his motion to set aside the verdict both challenge the sufficiency of the evidence to sustain his convictions. Because these arguments address the same issue, we address them together.

## 2. Analysis

In Virginia, "[a] conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005) (citing *Garland v. Commonwealth*, 8 Va. App. 189, 191-93 (1989)); *see also Fisher v. Commonwealth*, 228 Va. 296, 299 (1984) ("A rape conviction may be sustained solely upon the testimony of the victim. There is no requirement of corroboration."). "The reason for the rule is the typically clandestine nature of the crime. There are seldom any witnesses to such an offense except the perpetrator and the victim. A requirement of corroboration would cause most sex offenses to go unpunished." *Fisher*, 228 Va. at 299. Therefore, a "victim's testimony, if credible and accepted by the finder of fact, is sufficient evidence, standing alone, to support the conviction." *Id.*

"[T]he credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses." *Schneider v. Commonwealth*, 230 Va. 379, 382 (1985) (citing *Coppola v. Commonwealth*, 220 Va. 243, 252 (1979), *cert. denied*, 444 U.S. 1103 (1980)). This Court must accept the factfinder's "determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006) (quoting *Walker v. Commonwealth*, 258 Va. 54, 70-71 (1999), *cert. denied*, 528 U.S. 1125 (2000)). "A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.*; *see e.g.*, *Nobrega*, 271 Va. at 518 (holding that a child witness was not inherently incredible despite minor inconsistencies because "her testimony did not wa[]ver with regard to the acts of sexual intercourse"). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must

be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006) (quoting *Cardwell v. Commonwealth*, 209 Va. 412, 414 (1968)).

At trial, the victim consistently testified that one night between May 1, 2010 and May 31, 2011, Mayo entered her bedroom after she had gone to bed and inserted his finger into her vagina and also touched her leg with his penis. She remained steadfast in this account despite Mayo's lengthy cross-examination of her that was attempting to undermine her credibility before the jury. Any inconsistencies that Mayo elicited during his cross-examination were put before the jury for its consideration. *See Kelley*, 69 Va. App. at 626 ("[A]s Virginia law dictates, '[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." (second alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011))). In exercising its role as the factfinder, the jury weighed the evidence and resolved any inconsistencies in favor of the Commonwealth in this case. In doing so, the jury necessarily rejected Mayo's theory of innocence—that the victim had lied—and found her to be a credible witness.

Virginia law is clear that the jury was entitled to convict Mayo based solely upon the victim's testimony because it found her credible and believed her testimony. *See Fisher*, 228 Va. at 299; *Wilson*, 46 Va. App. at 87-88. There is no requirement of a corroborating eyewitness because, as the Supreme Court has aptly stated, "A requirement of corroboration would cause most sex offenses to go unpunished[,]" given the clandestine nature of such crimes. *See Fisher*, 228 Va. at 299. For the same reason, we reject Mayo's assertion that her testimony is somehow insufficient because there was no "confession or incriminating statements by the Defendant [Mayo]." We must accept the jury's determination of credibility unless the victim was inherently incredible as a matter of law. *See Nobrega*, 271 Va. at 518.

The inconsistencies that Mayo raises to this Court simply do not render her testimony "so manifestly false that reasonable men ought not to believe it[.]" *See Juniper*, 271 Va. at 415. Mayo specifically points to the fact that the Newport News townhouse had only two bedrooms and that the victim testified that she remembered the townhouse as having three bedrooms.[5] However, her memory about the number of bedrooms could well have been influenced by the fact that her aunt lived with them in the townhouse in Newport News for a while—and slept in a room separate from the room the victim and her sister shared and also separate from the room Mayo and her mother shared. Therefore, even if this room where the aunt slept was not specifically designated as a bedroom in the townhouse's floor plan, the finder of fact (here the jury) may well have concluded that a child may reasonably have remembered it as one.

Furthermore, although she admitted, at trial, that she had incorrectly told Child Protective Services in 2012 that no one had ever touched her inappropriately, the jury was entitled to consider her explanation in judging her credibility at trial. As the victim explained at trial, she was just not "comfortable telling anybody at the time" and she noted that the CPS interview had nothing to do with Mayo. The CPS interview concerned an incident that was alleged to have happened between her younger sister and a neighborhood boy, and, in the CPS interview, the victim had not actually been asked specifically about Mayo. Therefore, the jury could have reasonably concluded that she did not feel that she needed to report that Mayo had touched her in the past.

In addition, the jury clearly heard that Mayo began inappropriately touching the victim in 2009 and that the incident for which Mayo was on trial was described by her as "the worst time" and "the first time that he had ever stuck anything inside of" her. Therefore, the jury could have reasonably concluded that some of the inconsistencies between her previous accounts and her

---

[5] During trial, the victim and her mother both testified that the Newport News townhouse had three bedrooms. However, Mayo maintains that the townhouse only had two bedrooms, and the Commonwealth ultimately stipulated that the townhouse had two bedrooms.

testimony at trial stemmed from Mayo's questioning of her at trial about statements she had made in her prior interviews when she was discussing other alleged incidents for which Mayo was not charged at trial.

Finally, a "victim's failure to immediately report the incident d[oes] not render his [or her] testimony inherently incredible as a matter of law." *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991); *see, e.g.*, *Love v. Commonwealth*, 18 Va. App. 84, 90 (1994) (holding that a seven-year delay in reporting did not render the victim's testimony inherently incredible). Thus, the child's five-year delay in reporting this sexual assault does not render her testimony inherently incredible as a matter of law. *See Love*, 18 Va. App. at 90. Instead, it was "up to the jury to determine what effect, if any, the delay in reporting the incident had on the credibility of the child's testimony." *Id.*

The victim testified that she did not promptly disclose the incident because she was "scared" and because Mayo "was supposed to be like a father" to her. She also testified that she first reported this sexual assault in November 2016 because she had learned that there was a chance that Mayo would be coming back into her life. She also testified that, at that point, she feared for her younger sisters' safety and for her own safety. The jury could reasonably have found her explanation credible.

In sum, we certainly cannot say that the victim's testimony was "so manifestly false that reasonable men ought not to believe it[.]" *See Juniper*, 271 Va. at 415. Given that the jury found her credible in this case, we certainly cannot say that no rational factfinder could have found the evidence sufficient to convict Mayo of object sexual penetration and aggravated sexual battery of a child under age thirteen. Accordingly, we uphold the jury's convictions of Mayo.

### B. Post-Trial Motions 2-11

Next, we address the trial court's denial of the remainder of the numerous post-trial motions.

### 1. Issues for Which No Argument Was Made or No Legal Authority Was Provided (Post-Trial Motions 4, 5, & 6)

Rule 5A:20(e) provides, "The opening brief of appellant must contain . . . [t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Thus, on appeal, appellant bears the burden of presenting an argument in support of his contention that the trial court erred and of citing legal authority to support his contentions. *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017). "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration. We will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992).

> Simply put, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."

*Bartley*, 67 Va. App. at 746 (alteration in original) (quoting *Sneed v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)).

Mayo assigns error to the trial court's denial of his "Motion to Dismiss Prosecutorial Misconduct" and his "Motion to Dismiss Prosecutorial Misconduct #2," but he provides no argument in support of his contention that the trial court erred in denying these motions. In his brief, he attempts to incorporate the arguments he made in the motions submitted to the trial court. However, Rule 5A:19(e) clearly provides that "[a]ttempts to incorporate arguments made below by reference to pleadings, motions, memorandum, or other filings are prohibited." Therefore, Mayo has waived appellate review of the trial court's denial of his motion to dismiss for alleged

- 11 -

prosecutorial misconduct and his second motion to dismiss for alleged prosecutorial misconduct because he makes no argument to this Court on appeal in support of his assignment of error.

Mayo also assigns error to the trial court's denial of his motion for summary judgment. However, he has also waived appellate review of the trial court's denial of this motion—which he filed more than seven months *after* the jury had rendered its verdict—because he failed to cite any legal authority in support of his contention that he is entitled to summary judgment in this case. *See* Rule 5A:20(e); *Mitchell v. Commonwealth*, 60 Va. App. 349, 354-55 (2012).

Therefore, we do not disturb the trial court's decision to deny those motions.

### 2. Issues Which Were Not Timely Raised to the Trial Court
### (Post-Trial Motions 2, 3, 7, 8, & 10)

Rule 5A:18 provides, "No ruling of the trial court or the Virginia Workers' Compensation Commission will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." In order to preserve an issue for appellate review, appellant must *timely* and *specifically* object to the rulings of the trial court "so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)). "Not just any objection will do. It must be both *specific* and *timely* – so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (emphasis in original) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). Therefore, issues that are not timely raised with some specificity are not preserved for appeal and are considered waived. *Brown*, 279 Va. at 219.

On appeal, Mayo contends that the trial court erred in denying the following motions: motion to dismiss insufficient indictments, motion for expert testimony, motion for new trial, motion to dismiss improper constructive amendment of an indictment, and motion to dismiss for

improper venue. Mayo's trial began on January 7, 2020. The jury rendered its verdict on January 9, 2020. *None* of the motions Mayo now brings before this Court were filed before the jury convicted Mayo.

### a. Post-Trial Motions 2 & 8 (Motion to Dismiss Insufficient Indictments and Motion to Dismiss Improper Constructive Amendment of an Indictment)

Under Rule 3A:9, Mayo was required to raise the objections he made to the indictment at least seven days *before* trial. Failure to do so constitutes a waiver of his objections. *See* Rule 3A:9. Mayo did not make these motions until more than five months *after* trial. Therefore, we uphold the trial court's denial of these motions because Mayo did not timely make either of them. *See* Rule 3A:9; Rule 5A:18.

### b. Post-Trial Motion 7 (Motion for New Trial)

In Mayo's motion for new trial, he contends that he did not receive a fair trial because he alleged that the jury was not impartial. Objections related to the selection of the jury must be raised either during *voir dire* or before the jury is empaneled. *See Green v. Commonwealth*, 266 Va. 81, 100 (2003). Otherwise, appellant has waived the argument. *See id.* Mayo never objected to any of the jurors that were later empaneled before the jury was empaneled. In fact, Mayo raised no objection to the jurors until nine months *after* the jury had rendered its verdict. Therefore, the motion was nowhere near timely made, and we uphold the trial court's denial of this motion. *See* Rule 5A:18; *Green*, 266 Va. at 100.

### c. Post-Trial Motion 10 (Motion to Dismiss for Improper Venue)

"An objection to venue is addressed to the sound discretion of the trial court, and the court's action in overruling the objection will not be reversed on appeal unless the record affirmatively reflects an abuse of discretion." *Meyer v. Brown*, 256 Va. 53, 56-57 (1998). Here, Mayo did not make a motion to dismiss for improper venue until more than five months after the jury had

rendered its verdict. Therefore, the motion was certainly not timely raised, and under these circumstances, we uphold the trial court's denial of this motion. *See* Code § 19.2-244; Rule 5A:18; *Gheorghiu v. Commonwealth*, 280 Va. 678 (2010).

### d. Post-Trial Motion 3 (Motion for Expert Testimony)

Mayo contends that the trial court erred in denying his motion for expert testimony because he was entitled to have Dr. Michelle Clayton testify as an expert witness at trial. However, he did not file his motion for expert testimony until more than six months *after* the jury had rendered its verdict. Furthermore, Mayo specifically declined when the trial court asked if Mayo wanted to secure Dr. Clayton as a witness for trial. Therefore, Mayo has clearly waived this issue, and we uphold the trial court's denial of the motion for expert testimony. *See* Rule 5A:18.

### 3. Issues Without Merit (Post-Trial Motions 9 & 11)

On appeal, Mayo also contends that the trial court erred in denying his motion to dismiss alleging a *Brady* violation and motion to dismiss for want of jurisdiction.

### a. Post-Trial Motion 9 (Motion to Dismiss Alleging a *Brady* Violation)

Mayo contends that the trial court erred in denying his motion to dismiss alleging a *Brady* violation because "the Commonwealth failed to disclose to Mayo the existence of important exculpatory evidence from Dr. Michelle Clayton until the middle of Mayo's trial, after it was too late for Mayo to subpoena Dr. Clayton."[6]

Contrary to Mayo's contention, the Commonwealth did not fail to timely disclose any exculpatory evidence from Dr. Clayton. This Court has previously held, "Evidence is not suppressed for *Brady* purposes when the Commonwealth discloses it in time for effective use by the defense at trial." *Church v. Commonwealth*, 71 Va. App. 107, 121 (2019); *see also Commonwealth*

---

[6] Mayo also argues that the Commonwealth did not comply with the rules of discovery, pursuant to Rule 3A:11. However, we do not address that argument because Mayo did not raise it below in the trial court. *See* Rule 5A:18.

*v. Tuma*, 285 Va. 629, 635 (2013) ("Under *Brady*, '[d]isclosure even in mid-trial suffices if time remains for the defendant to make effective use of the exculpatory material.'" (alteration in original) (quoting *United States v. Higgins*, 75 F.3d 332, 335 (7th Cir. 1996))). The record before us on appeal clearly establishes that the attorney for the Commonwealth informed Mayo of the existence of Dr. Clayton's report and provided him a copy of it before trial began. Upon receiving this information, Mayo did not ask for a continuance or a recess or otherwise raise an objection about why he could not go forward. *See e.g.*, *Frontanilla v. Commonwealth*, 38 Va. App. 220, 230 (2002) (holding that when an appellant learns of alleged exculpatory evidence at trial but fails "to 'bring the matter to the court's attention,' by way of a motion for mistrial, for a continuance, or for any other relief" the appellant has "waive[d] the point." (citing *Graham v. Commonwealth*, 250 Va. 79, 87-88 (1995))). Therefore, we uphold the trial court's denial of Mayo's motion to dismiss based on a supposed *Brady* violation.

### b. Post-Trial Motion 11 (Motion to Dismiss for Want of Jurisdiction)

Mayo contends that the trial court erred in denying his motion to dismiss for want of jurisdiction. He argues that "the Newport News Circuit Court lacks jurisdiction to try him for felony criminal acts" because the United States Constitution grants the United States Supreme Court exclusive and original jurisdiction to try his criminal case. This argument is undisputedly completely meritless. The United States Supreme Court has neither exclusive nor original jurisdiction to hear cases brought by the Commonwealth of Virginia to prosecute the violation of Virginia criminal statutes within Virginia. The Circuit Court of the City of Newport News clearly had subject matter jurisdiction to hear this case. Therefore, we uphold the trial court's denial of Mayo's motion to dismiss for want of jurisdiction.

## III.  CONCLUSION

For all of the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*